IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: 4:21-CV-155

CIELO JEAN 'CJ' GIBSON, IRINA )
VORONINA, KIM COZZENS a/k/a )
KIMBERLY COZZENS, CARMEN )
ELECTRA a/k/a TARA LEIGH PATRICK, )
ROSA ACOSTA, URSULA MAYES, )
LAURIE FETTER JACOBS, JESSE )
GOLDEN a/k/a JESSICA GOLDEN, EVA )
PEPAJ, and JESSICA BURCIAGA, )
  )                                    **COMPLAINT**
      Plaintiffs, )
  )                              **JURY TRIAL DEMANDED**
    v. )
  )
FONTANA GOLF DISTRIBUTORS, LLC )
d/b/a CHERRY'S GENTLEMEN'S CLUB )
and VINCENT FAZIO, )
  )
      Defendants. )
_____ )
  )

Plaintiffs Cielo Jean "CJ" Gibson; Irina Voronina; Kim Cozzens a/k/a Kimberly

Cozzens; Carmen Electra a/k/a Tara Leigh Patrick; Rosa Acosta; Ursula Mayes; Laurie Fetter

Jacobs; Jesse Golden a/k/a Jessica Golden; Eva Pepaj; Jessica Burciaga, (collectively,

"Plaintiffs"), file this Complaint against Amparo Gonzales Sylvain d/b/a Cherry's Gentlemen's

Club and Vincent Fazio, (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of Images of

Plaintiffs, each of whom are well-known professional models, to promote their strip club,

Cherry's Gentlemen's Club, located in Havelock, North Carolina ("Cherry's" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of

- 1 -

Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy - misappropriation; d) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; e) defamation; and f) various common law torts, including conversion.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, defendant Fontana Golf Distributors, LLC is a corporation formed under the laws of the state of North Carolina, with its principal place of business located at 414 King Richard Court Jacksonville, North Carolina 28546, which operates Cherry's Gentlemen's Club, which is located 400 Fontana Boulevard Unit B Havelock, North Carolina 28532.

8. Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendants' principal place of business in Havelock, North Carolina.

- 2 -

9.      A significant portion of the alleged causes of action arose and accrued in Havelock, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Havelock, North Carolina.

## PARTIES

*Plaintiffs*

10.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California and Hillsborough County, Florida.

11.      Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff Kim Cozzens a/k/a Kimberly Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County California.

13.      Plaintiff Carmen Electra a/k/a Tara Leigh Patrick ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

16.      Plaintiff Laurie Fetter Jacobs ("Jacobs") is a well-known professional model, and a resident of Westchester County, New York.

17.      Plaintiff Jesse Golden a/k/a Jessica Golden ("Golden") is a well-known professional model, and a resident of Los Angeles.

18.      Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

- 3 -

19.    Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

***Defendants***

20.    Defendant Fontana Golf Distributors LLC is a domestic limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina.  At all times relevant to this action, Fontana Golf Distributors LLC operated Cherry's Gentlemen's Club in Havelock, North Carolina.

21.    Defendant Vincent Fazio is a Manager of Defendant Fontana Golf Distributors, LLC who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

22.    Service of process may be perfected upon Fontana Golf Distributors, LLC by serving the registered agent for service of process, Joseph Fazio who can also be served in his capacity as an individual Defendant at 414 King Richard Court, Jacksonville, North Carolina 28546.

## FACTUAL ALLEGATIONS

23.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

24.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

- 4 -

25.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

26.     In the case of each Plaintiff, this apparent claim was false.

27.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

28.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

29.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

30.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

***Plaintiffs' Individual Backgrounds and Careers***

31.     Plaintiff Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY.

- 5 -

Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

32.     Plaintiff Voronica is an international model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max*, *Ocean, Shape, 944, Knockout, Q*, *People*, *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named *Kandy Magazine*'s Model of the Year as a result of her fans downloading the highest number of digital issues that year. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, Twitter and YouTube. Voronina got her first big screen break in "Reno 911!: Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," &"Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She has more than 4.5 million social media followers.

33.     Plaintiff Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher

- 6 -

Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

34.     That we know of, Gibson, Voronica, and Cozzens are depicted in the photo in Exhibit "A" to promote Cherry's on its Facebook page. These Images were intentionally altered to make it appear that Gibson, Voronica, and Cozzens were either strippers working at Cherry's, that they endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

35.     Gibson, Voronica, and Cozzens have never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Plaintiff Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009,

Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.

37.     That we know of, Electra is depicted in the photo in Exhibit "B" to promote Cherry's on its Facebook page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Cherry's, that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

38.     Electra has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no

- 8 -

remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Plaintiff Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

40.     That we know of, Acosta is depicted in the photos in Exhibit "C" to promote Cherry's on its Facebook page. These Images were intentionally altered to make it appear that Acosta was either a stripper working at Cherry's, that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

41.     Acosta has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

- 9 -

42.     Plaintiff Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

43.     That we know of, Mayes is depicted in the photo in Exhibit "D" to promote Cherry's on its Facebook page.  This Image was intentionally altered to make it appear that Mayes was either a stripper working at Cherry's that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

44.     Mayes has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Plaintiff Jacobs is an American model and actress. She was the Playmate of the Month in the May, 2003 issue of "Playboy." Other publications include, Maxim, FHM, Vanity Fair, Kohl's, Macy's, McDonalds, Sunglass hut, and Leg Avenue. Fetter was cast in the indie thriller "Hiters" and made a guest appearance on an episode of the hit TV series "CSI: Crime Scene Investigation." She won an Award for Excellence - Best Actress at the 2005 Japanese Adult Broadcasting Awards for "Playmate Profile," which was televised on the Japanese satellite

TV broadcaster Sky PerfecTV! on their Playboy channel. Twitter 41.5k

46.     That we know of, Jacobs is depicted in the photo in Exhibit "D" to promote Cherry's on its Facebook page. This Image was intentionally altered to make it appear that Jacobs was either a stripper working at Cherry's, that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

47.     Jacobs has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Plaintiff Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

49.     That we know of, Golden is depicted in the photos in Exhibit "E" to promote Cherry's on its Facebook page. This Image was intentionally altered to make it appear that Golden was either a stripper working at Cherry's that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's.

50.     Golden has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no

- 11 -

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Plaintiff Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

52.     That we know of, Pepaj is depicted in the photos in Exhibit "F" to promote Cherry's on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Cherry's that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's

53.     Pepaj has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

54.     Plaintiff Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself

in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

55.    That we know of, Burciaga is depicted in the photo in Exhibit "G" to promote Cherry's on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either a stripper working at Cherry's that she endorsed Cherry's, or that she was otherwise associated or affiliated with Cherry's

56.    Burciaga has never been employed at Cherry's, has never been hired to endorse Cherry's, has never been otherwise associated or affiliated with Cherry's, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activities and Misappropriation***

57.    Defendants operates Cherry's, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

58.    In furtherance of its promotion their promotion of Cherry's, Defendants own, operate, and control Cherry's social media accounts, including its Facebook, Twitter, and Instagram accounts.

59.    Defendants used Cherry's Facebook, Twitter, and Instagram accounts to promote Cherry's, and to attract patrons.

60.    Defendants did this for their own commercial and financial benefit.

61.    Defendants have used, advertised, created, printed, and distributed the Images of

- 13 -

Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Cherry's, endorsed Cherry's, or was otherwise associated or affiliated with Cherry's.

62. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Cherry's to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

63. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Cherry's, and at no point have any of the Plaintiffs ever endorsed Cherry's, or otherwise been affiliated or associated with Cherry's.

64. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

65. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

66. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

67. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

68. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and

how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

69. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

70. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Cherry's.

71. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

72. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Cherry's.

73. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

74. No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

75. No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Cherry's website, Twitter, Facebook, or Instagram accounts.

76. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her

- 15 -

Images.

77.     Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

78.     Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

145.     The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Cherry's advertisements.

146.     Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

147.     Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Cherry's.

148.     Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

149.     Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Cherry's, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Cherry's.

150.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Cherry's.

151.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs'

- 16 -

sponsorship of, employment at, or other relationship with Cherry's, and the goods and services provided by Cherry's.

152.     Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

153.     Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Cherry's, or worked at, sponsored, or approved of Cherry's goods, services, or commercial activities.

154.     This was done to promote and attract clientele to Cherry's, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

155.     Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Cherry's, nor worked at, sponsored, or approved of Cherry's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Cherry's.

156.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Cherry's.

157.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Cherry's and the goods and services provided by Cherry's.

158.     Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

- 17 -

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

159.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

160.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Cherry's website or related social media accounts as part of Defendants' advertising campaign.

161.    Cherry's website and social media accounts were designed to advertise and attract business to Cherry's and generate revenue for Defendants.

162.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

163.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

164.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

165.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Cherry's.

166.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

- 18 -

167.     Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

168.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

169.     Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

170.     Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

171.     Defendants' operated Cherry's website and social media accounts in order to promote Cherry's, to attract clientele thereto, and to thereby generate revenue for Defendant.

172.     As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

173.     Defendants' published Plaintiffs' Images on Cherry's website and social media accounts to create the false impression that Plaintiffs were either strippers working at Cherry's, endorsed Cherry's, or were otherwise affiliated, associated, or connected with Cherry's.

174.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Cherry's.

175.     Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

- 19 -

176.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

177.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

178.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

179.    Defendants' advertising practices offends the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

180.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Cherry's.

181.    Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Cherry's.

182.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

- 20 -

183.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

184.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

185.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

186.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1.

## FIFTH CAUSE OF ACTION
### (Defamation)

187.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Cherry's to the general public and potential clientele.

188.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Cherry's, that they endorsed Cherry's, or that they had some affiliation with Cherry's.

189.    None of these representations were true, and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

190.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Cherry's or endorsed Cherry's.

191.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Cherry's, had no affiliation with Cherry's, had not consented to the use of their Images, and had not been compensated for

- 21 -

the use of their Images.

192.    In the alternative, Defendants published the Images of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs,  because the Defendants  knew that Plaintiffs were not employed by Cherry's, had no affiliation with Cherry's, had not consented to the use of their Images, and had not been compensated for the use of their Images.

193.    Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

194.    Defendants' publication of Plaintiffs' Images constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

195.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

196.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

197.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per*

- 22 -

*se* under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

198.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
**(Negligence, Gross Negligence, and *Respondeat Superior*)**

223.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

224.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

225.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

226.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

227.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for

- 23 -

promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

228.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

229.     Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

230.     Defendants' breaches wer the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

231.     As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

232.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

233.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

234.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

- 24 -

235.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Cherry's to the general public and potential clientele.

236.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Cherry's or endorsed Cherry's.

237.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

238.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

239.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Cherry's.

240.     Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

241.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

242.     Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

243.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

244.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Cherry's, endorse Cherry's, or are otherwise affiliated with Cherry's, Defendants have not

- 25 -

compensated Plaintiffs.

245. Plaintiffs are therefore entitled to reasonable compensation for Cherry's unauthorized use of their Images.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury.

<u>**PRAYER FOR RELIEF**</u>

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through tenth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

**SIGNATURE PAGE FOLLOWS**

- 26 -

Respectfully submitted this 14th of October, 2021.

BY: /s/ John V. Golaszewski
   JOHN V. GOLASZEWSKI
   N.Y. Bar No. 4121091
   THE CASAS LAW FIRM, P.C.
   1740 Broadway, 15th Floor
   New York, NY 10019
   john@casaslawfirm.com
   T: 646.872.3178
   F: 855-220-9626
   *Attorneys for Plaintiff*

BY: /s/ Matthew R. Gambale
   MATTHEW R. GAMBALE
   N.C. Bar No. 43359
   OSBORN GAMBALE BECKLEY & BUDD PLLC
   721 W. Morgan Street
   Raleigh, North Carolina 27603
   matt@counselcarolina.com
   T: 919.373.6422
   F: 919.578.3733
   *Local Civil Rule 83.1(d) Attorneys for Plaintiff*